**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL BURBRIDGE, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| ADTRAN, INC., THOMAS R. STANTON, MICHAEL FOLIANO, ROGER D. SHANNON, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Michael Burbridge ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by ADTRAN, Inc. ("ADTRAN" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by ADTRAN; and (c) review of other publicly available information concerning ADTRAN.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired ADTRAN securities between February 28, 2019 and October 9, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      ADTRAN is a networking and communications company that provides services which enable voice, data, video, and internet communications across a variety of network infrastructures. ADTRAN also offers a broad portfolio of flexible software and hardware network solutions to service providers.

3.      On July 17, 2019, the Company announced "preliminary" earnings for second quarter 2019 due to its ongoing assessment of the reasonableness of its current and previously reported excess and obsolete inventory reserves ("E&O reserves").

4.      On this news, the Company's share price fell $3.69 per share, over 23%, to close at $12.13 per share on July 18, 2019, on unusually high trading volume.

5.      On October 9, 2019, after-market, the Company announced that its "revenue this quarter has been significantly impacted by a pause in shipments to a Tier 1 customer in Latin America and the continued slowdown in the spending at an international Tier 1 customer."

6.      On this news, the Company's share price fell $2.10 per share, over 19%, to close

at $8.81 per share on October 10, 2019, on unusually high trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there were material weaknesses in the Company's internal control over financial reporting; (2) that, as a result, certain E&O reserves had been improperly reported; (3) that, as a result, the Company's financial results for certain periods were misstated; (4) that there would be a pause in shipments to the Company's Latin American customer; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities

exchange.

## PARTIES

13.     Plaintiff Michael Burbridge, as set forth in the accompanying certification, incorporated by reference herein, purchased ADTRAN securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant ADTRAN is incorporated under the laws of Delaware with its principal executive offices located in Huntsville, Alabama. ADTRAN's common stock trades on the NASDAQ exchange under the symbol "ADTN."

15.     Defendant Thomas R. Stanton ("Stanton") was, at all relevant times, the Chief Executive Officer ("CEO") of the Company.

16.     Defendant Michael Foliano ("Foliano") has been the Chief Financial Officer ("CFO") of the Company since March 2019.

17.     Defendant Roger D. Shannon ("Shannon") was the CFO of the Company from November 2015 to March 2019.

18.     Defendants Stanton, Foliano, and Shannon (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     ADTRAN is a networking and communications company that provides services which enable voice, data, video, and internet communications across a variety of network infrastructures. ADTRAN also offers a broad portfolio of flexible software and hardware network solutions to service providers.

### Materially False and Misleading
### Statements Issued During the Class Period

20.     The Class Period begins on February 28, 2019. On that day, the Company filed its annual report on Form 10-K for the period ended December 31, 2018 (the "2018 10-K"), in which it reported total sales of $529.27 million and operating loss of $45.42 million. Regarding reserves, the 2018 10-K stated, in relevant part:

> We maintain substantial inventories of raw materials for long lead-time components to support this demand and avoid expedite fees. We also maintain substantial finished goods inventories. Our practice of maintaining sufficient inventory levels to assure prompt delivery of our products and services increases the amount of inventory that may become obsolete. The obsolescence of this inventory may require us to write down the value of the obsolete inventory, which may have an adverse effect on our operating results.

> *          *          *

> **Inventory**

> We carry our inventory at the lower of cost and net realizable value, with cost being determined using the first-in, first-out method. We use standard costs for material, labor, and manufacturing overhead to value our inventory. Our standard costs are updated on at least a quarterly basis and any variances are expensed in the current period; therefore, our inventory costs approximate actual costs at the end of each reporting period. We write down our inventory for estimated obsolescence or unmarketable inventory by an amount equal to the difference between the cost of inventory and the estimated fair value based upon assumptions about future demand and market conditions. If actual future demand or market conditions are less favorable than those projected by management, we may be required to make additional inventory write-downs. Our reserve for excess and obsolete inventory was $30.0 million and $23.4 million at December 31, 2018 and 2017, respectively. Inventory disposals charged against the reserve were $0.4

million, $8.3 million and $4.7 million for the years ended December 31, 2018, 2017 and 2016, respectively.

21.     Moreover, Defendants Stanton and Shannon signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud in the 2018 10-K. The report also stated that the Company's internal control over financial reporting was effective as of December 31, 2018.

22.     On April 17, 2019, the Company announced its first quarter 2019 financial results, reporting sales of $143.8 million and net income of $0.8 million.

23.     On May 7, 2019, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2019, affirming the previously reported financial results. Regarding reserves, it stated, in relevant part:

> We establish reserves for estimated excess, obsolete, or unmarketable inventory equal to the difference between the cost of the inventory and the estimated fair value of the inventory based upon assumptions about future demand and market conditions. At March 31, 2019 and December 31, 2018, raw materials reserves totaled $17.1 million and $17.6 million, respectively, and finished goods inventory reserves totaled $12.8 million and $12.4 million, respectively.

24.     The above statements identified in ¶¶20-23 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that there were material weaknesses in the Company's internal control over financial reporting; (2) that, as a result, certain E&O reserves had been improperly reported; (3) that, as a result, the Company's financial results for certain periods were misstated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

25.     The truth partially emerged on July 17, 2019 when the Company announced "preliminary" earnings for second quarter 2019 due to its ongoing assessment of the reasonableness of its current and previously reported excess and obsolete inventory reserves

("E&O reserves"). The press release stated, in relevant part:

Preliminary Financial Results

The Company's reported results for the quarter and year to date ended June 30, 2019 are preliminary due to the Company's ongoing assessment of the reasonableness of its current and previously reported excess and obsolete inventory reserves ("E&O reserves"). The Company is working diligently to finalize its assessment and evaluate the materiality of adjustments to the reserve, if any, and determine the appropriate method of correction to its current and previously reported financial results, as necessary. In addition to assessing the reasonableness of its E&O reserves, the Company is also assessing inventory related internal control deficiencies which may result in the identification of material weaknesses. If material changes to our preliminary results do occur, an updated press release will be issued.

Quarterly Results

For the quarter, revenue was $156.4 million compared to $128.0 million for the second quarter of 2018. Net income is estimated to be $5.1 million compared to a net loss of $7.7 million for the second quarter of 2018. Earnings per share, assuming dilution, is estimated to be $0.11 compared to a loss per share of $0.16 for the second quarter of 2018. Non-GAAP net income is estimated to be $6.9 million compared to a net loss of $4.6 million for the second quarter of 2018. Non-GAAP earnings per share, assuming dilution, is estimated to be $0.14 compared to a loss per share of $0.10 for the second quarter of 2018. Non-GAAP earnings per share exclude stock-based compensation expense, acquisition related amortizations and other expenses, restructuring expenses, gain on bargain purchase of a business or other contingencies, amortization of pension actuarial losses, and a reimbursement from a claim settlement. The reconciliation between GAAP net income (loss) and earnings (loss) per share to non-GAAP net income (loss) and non-GAAP earnings (loss) per share is in the table provided.

26.     On this news, the Company's share price fell $3.69 per share, over 23%, to close at $12.13 per share on July 18, 2019, thereby injuring investors.

27.     On July 18, 2019, the Company held a conference call to discuss its second quarter 2019 results. On the call, Defendant Stanton was asked about the Company's relationship with a Tier 1 Latin American customer. Defendant Stanton stated in response: "our history with that [Latin American] customer would tell you that they are different in the way that they plan their demand, but they have a goal of—a specific goal of VDSL Vectored footprint expansion. I would tell you they are not to that goal, they have to buy significantly more amount of material

in order to meet that, which is their first phase goal. So we're just continuing to operate with them and try to meet their demand and their time lines and things like that."

28.     On August 12, 2019, the Company disclosed that it would be unable to timely file its quarterly financial report with the SEC. Moreover, the Company disclosed that certain material weaknesses in its internal control resulted in a misstatement of previously reported E&O reserves. In a Form 12b-25 filed with the SEC, the Company stated, in relevant part:

> On August 8, 2019, subsequent to the issuance of the Company's Annual Report on Form 10-K for the year ended December 31, 2018 ("2018 Form 10-K"), the Company's management, in consultation with the Audit Committee of the Board of Directors, concluded that there were two material weaknesses related to internal control deficiencies that existed as of December 31, 2018 and that continued through the end of the second quarter of 2019. Specifically, the Company's management has determined that the Company did not, as of December 31, 2018 and through June 30, 2019, design and maintain effective internal control over certain aspects of its valuation and existence of inventory. As a result, Management's Report on Internal Control Over Financial Reporting included in Item 9A of the 2018 Form 10-K and the opinion of PricewaterhouseCoopers LLP ("PwC") relating to the effectiveness of the Company's internal control over financial reporting as of December 31, 2018 included in the 2018 Form 10-K should no longer be relied upon. Additionally, the statements within "*Evaluation of disclosure controls and procedures*" included in Part II, Item 9A of the 2018 Form 10-K regarding the effectiveness of the Company's disclosure controls and procedures for the period presented are no longer accurate due to the material weaknesses described above. The Company has determined to prepare and file an amendment to the 2018 Form 10-K (the "Form 10-K/A") in order to address the material weaknesses and related disclosures.
>
> Although the identified material weaknesses did result in a misstatement of the Company's previously reported E&O Reserves, management of the Company currently believes that such misstatements did not result in a material misstatement of the Company's previously issued financial statements. However, the Company has not yet completed its assessment and, therefore, is unable to affirmatively conclude at this time that the completion of such assessment will not result in a material misstatement of its previously issued financial statements or that the out-of-period correction of such misstatement would not be material to the Company's financial results for the three and six months ended June 30, 2019 or forecasted 2019 financial results.

29.     On September 20, 2019, the Company filed its quarterly report for the period ended June 30, 2019 with the SEC in which it reported total sales of $156.39 million and net

income of $3.99 million. The Company also disclosed a $0.8 million out-of-period adjustment, which increased its E&O reserves for the period; the Company stated, in relevant part:

*Correction of Immaterial Misstatements.*

During the three months ended June 30, 2019, the Company determined that there was an immaterial misstatement of its excess and obsolete inventory reserves in its previously issued annual and interim financial statements. The Company corrected this misstatement by recognizing a $0.8 million out-of-period adjustment during the three months ended June 30, 2019, which increased its excess and obsolete inventory reserve and cost of goods sold for the period. For the six months ended June 30, 2019, the out-of-period adjustment was a cumulative $0.2 million reduction in its excess and obsolete inventory reserve and cost of goods sold. In addition, the Company determined that a $1.0 million cash inflow related to an insurance recovery was incorrectly classified as a cash flow from operations instead of a cash flow from investing activities within the unaudited Condensed Consolidated Statement of Cash Flows for the three months ended March 31, 2019. The accompanying Unaudited Condensed Consolidated Statement of Cash Flows for the six months ended June 30, 2019 correctly reflects the $1.0 million insurance recovery as a cash inflow from investing activities. Management has determined that these misstatements were not material to any of its previously issued financial statements and that correction of the misstatements is also not material to the current or estimated annual 2019 financial results on both a quantitative and qualitative basis.

30.     The above statements identified in ¶¶25, 27-29 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there would be a pause in shipments to the Company's Latin American customer; and (2) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

31.     On October 9, 2019, after-market, the Company announced that its "revenue this quarter has been significantly impacted by a pause in shipments to a Tier 1 customer in Latin America and the continued slowdown in the spending at an international Tier 1 customer." In a press release announcing preliminary third quarter 2019 financial results, the Company stated, in relevant part:

Based upon preliminary information, revenue for the quarter is expected to be approximately $114 million. Earnings per share for the quarter, assuming dilution, is expected to be a loss of approximately $0.96. Non-GAAP earnings per share for the quarter, assuming dilution, is expected to be a loss of approximately $0.06. Earnings per share is expected to be affected by a one-time, non-cash, valuation allowance of approximately $37 million, that will be recorded to income tax expense in the Company's consolidated income statement to reduce the carrying value of the Company's deferred tax assets.

ADTRAN Chief Executive Officer Tom Stanton stated, "Our revenue this quarter has been significantly impacted by a pause in shipments to a Tier 1 customer in Latin America and the continued slowdown in the spending at an international Tier 1 customer. With the exception of these two large customers, revenues generated from the rest of our business grew 20% over the previous quarter. Although we expect our Latin American customer sales to rebound, our current visibility regarding timing is limited. For the international Tier 1 customer, we expect that sales should resume with the new capital cycle in 2020."

Our current expectation for revenue for the fourth quarter of 2019, is that it will be flat to slightly down from the third quarter. Additionally, we plan for our non-GAAP operating expenses during the fourth quarter to be approximately 10% below our second quarter non-GAAP expense rate.

32.     On this news, the Company's share price fell $2.10 per share, over 19%, to close at $8.81 per share on October 10, 2019, on unusually high trading volume.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired ADTRAN securities between February 28, 2019 and October 9, 2019, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, ADTRAN's common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least

hundreds or thousands of members in the proposed Class.  Millions of ADTRAN common stock were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by ADTRAN or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of ADTRAN; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

39.     The market for ADTRAN's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, ADTRAN's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired ADTRAN's securities relying upon the integrity of the market price of the Company's securities and market information relating to ADTRAN, and have been damaged thereby.

40.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of ADTRAN's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about ADTRAN's business, operations, and prospects as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about ADTRAN's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.     During the Class Period, Plaintiff and the Class purchased ADTRAN's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding ADTRAN, their control over, and/or receipt and/or modification of ADTRAN's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning ADTRAN, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

45.     The market for ADTRAN's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, ADTRAN's securities traded at artificially inflated prices during the Class Period. On April 24, 2019, the Company's share price closed at a Class Period high of $17.78 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's

securities relying upon the integrity of the market price of ADTRAN's securities and market information relating to ADTRAN, and have been damaged thereby.

46.     During the Class Period, the artificial inflation of ADTRAN's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about ADTRAN's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of ADTRAN and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.     At all relevant times, the market for ADTRAN's securities was an efficient market for the following reasons, among others:

(a)     ADTRAN shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, ADTRAN filed periodic public reports with the SEC and/or the NASDAQ;

(c)     ADTRAN regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     ADTRAN was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for ADTRAN's securities promptly digested current information regarding ADTRAN from all publicly available sources and reflected such information in ADTRAN's share price. Under these circumstances, all purchasers of ADTRAN's securities during the Class Period suffered similar injury through their purchase of ADTRAN's securities at artificially inflated prices and a presumption of reliance applies.

49.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of ADTRAN who knew that the statement was false when made.

### FIRST CLAIM
#### Violation of Section 10(b) of The Exchange Act and
#### Rule 10b-5 Promulgated Thereunder
#### Against All Defendants

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase ADTRAN's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for ADTRAN's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about ADTRAN's financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of ADTRAN's value and

performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about ADTRAN and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing ADTRAN's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have

actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of ADTRAN's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired ADTRAN's securities during the Class Period at artificially high prices and were damaged thereby.

59.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that ADTRAN was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their ADTRAN securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
## Violation of Section 20(a) of The Exchange Act
## Against the Individual Defendants

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     Individual Defendants acted as controlling persons of ADTRAN within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, ADTRAN and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: October 17, 2019                     By:  */s/ Lesley F. Portnoy*

                                            **GLANCY PRONGAY & MURRAY LLP**
                                            Lesley F. Portnoy (LP-1941)
                                            230 Park Ave., Suite 530
                                            New York, NY 10169
                                            Telephone: (212) 682-5340
                                            Facsimile: (212) 884-0988
                                            Email: lportnoy@glancylaw.com

                                                    -and-

                                            Lionel Z. Glancy
                                            Robert V. Prongay
                                            Charles H. Linehan
                                            Pavithra Rajesh
                                            1925 Century Park East, Suite 2100
                                            Los Angeles, CA 90067
                                            Telephone: (310) 201-9150
                                            Facsimile: (310) 201-9160
                                            Email: info@glancylaw.com

**KIRBY MCINERNEY LLP**
Ira M. Press
Thomas W. Elrod
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
Facsimile: (212) 751-2540
Email: ipress@kmllp.com
          telrod@kmllp.com

*Attorneys for Plaintiff Michael Burbridge*

## SWORN CERTIFICATION OF PLAINTIFF

## ADTRAN, Inc. SECURITIES LITIGATION

I, Michael Burbridge, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead
        Plaintiff motion on my behalf.

2.      I am duly authorized to institute legal action against ADTRAN, Inc.
        and other defendants.

3.      I did not purchase the ADTRAN, Inc. securities that are the subject of this action
        at the direction of plaintiff's counsel or in order to participate in any private action
        arising under this title.

4.      I am willing to serve as a representative party on behalf of a class and will testify
        at deposition and trial, if necessary.

5.      My transactions in ADTRAN, Inc. securities during the Class Period set forth in
        the Complaint are as follows:

        (See attached transactions)

6.      I have not sought to serve, nor served, as a representative party on behalf of a
        class under this title during the last three years, except for the following:

7.      I will not accept any payment for serving as a representative party, except to
        receive my pro rata share of any recovery or as ordered or approved by the court,
        including the award to a representative plaintiff of reasonable costs and expenses
        (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

DocuSigned by:

*Michael Burbridge*

29BBF9B3CDC7410...

10/11/2019
_____                                    _____
Date                                                        Michael Burbridge

**Michael Burbridge's Transactions in ADTRAN, Inc. (ADTN)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 5/22/2019 | Bought | 500 | $16.4197 |
| 5/22/2019 | Sold | -100 | $16.2500 |
| 5/22/2019 | Sold | -300 | $16.2600 |
| 5/22/2019 | Sold | -100 | $16.2700 |
| 7/18/2019 | Bought | 500 | $14.0500 |
| 7/18/2019 | Bought | 500 | $12.2500 |